IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER T. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2-20-cv-02504-SHM-atc |
| | ) |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is a case about insurance coverage. Before the Court is Defendant State Farm Fire and Casualty Company's ("State Farm") July 23, 2021 Motion for Summary Judgment ("State Farm's Motion"). (D.E. 39). Plaintiff Christopher T. Johnson ("Johnson") responded on August 19, 2021. (D.E. 41.) State Farm replied on September 2, 2021. (D.E. 45.) For the following reasons, State Farm's Motion is **GRANTED**.

I. **Background**

Johnson's home is located at 8729 Guyboro Cove, Germantown, Tennessee. (D.E. 42 at ¶ 1.) On the morning of June 7, 2019, that area of Germantown experienced significant rainfall. (D.E. 42 at ¶ 2.) Rainwater accumulated around Johnson's house. (D.E. 42 at ¶ 3; D.E. 45 at ¶ 8.) It entered the house at multiple points, including under and through the doors and from the

toilets. (D.E. 42 at ¶ 4.) The water rose approximately two and one-half feet throughout the entire first floor of the house and receded quickly. (D.E. 42 at ¶ 6.)

Johnson made a claim with State Farm for losses caused by water intrusion under Policy No. 42-0139-N16 (the "Policy"). (D.E. 42 at ¶¶ 8, 9). At all applicable times, the Policy was in full force and effect. (D.E. 42 at ¶ 7.) The pertinent provisions of the Policy, including endorsements, are as follows:

> SECTION I – LOSSES NOT INSURED
>
> . . . .
>
> 2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: . . . .
>
> . . . .
>
> c. Water, meaning: (1) flood, surface water, waves (including tidal wave, tsunami, and seiche), tides, tidal water, overflow of any body of water, spray or surge from any of these, all whether driven by wind or not . . . . (the "Water Exclusion Provision")[1]

---

[1] There are two endorsements to the Policy, both of which purport to supersede all prior Policy language and endorsements. Both endorsements include the definition of "Water" quoted above. The priority of the endorsements is not relevant.

(D.E. 1-1, Page ID 36-37, 17, 24). The Policy does not define "flood" or "surface water." (D.E. 45 at ¶¶ 1, 2.)

State Farm provided $10,000 in coverage for Back-up of Sewer or Drain ("BUSD") under the Policy's BUSD Endorsement, but denied further coverage. (D.E. 42 at ¶ 10.) Johnson filed a Complaint against State Farm in the Circuit Court of Tennessee for the Thirtieth Judicial District. (D.E. 1-1, Page ID 6.) The Complaint alleges Breach of Contract and Bad Faith Refusal to Pay. State Farm filed a notice of removal and now moves for summary judgment on both claims. (D.E. 1; D.E. 39)

## II.  Jurisdiction and Choice of Law

The Court has diversity jurisdiction under 28 U.S.C. § 1332. A federal district court has original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).

Johnson is a resident of Germantown, Tennessee. (D.E. 1.) State Farm is an Illinois corporation with its principal place of business in Bloomington, Illinois. There is complete diversity. 28 U.S.C. § 1332(a)(1) (diversity exists when the parties are citizens of different states).

The removing party bears the burden of demonstrating that the amount in controversy exceeds the amount required by statute. See Shupe v. Asplundh Tree Expert Co., 566 F. App'x 476, 478

3

(6th Cir. 2014). State Farm has provided evidence that Johnson's claim exceeds $100,000. (D.E. 1-1, Page ID 57.) The amount in controversy is satisfied. See 28 U.S.C. § 1332(a)(1).

Federal courts sitting in diversity apply the choice-of-law rules of the forum state. See Performance Contracting Inc. v. DynaSteel Corp., 750 F.3d 608, 611 (6th Cir. 2014); Mountain Laurel Assurance Co. v. Wortham, No. 217CV02660TLPTMP, 2018 WL 5269829, at *3 (W.D. Tenn. Oct. 23, 2018). Where insurance contracts do not have a choice-of-law provision, "Tennessee courts apply the substantive law of the state in which the policy was issued and delivered." See Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc., 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998); see also Tenn. Code Ann. § 56-7-102 ("[E]very contract [issued by any insurance company doing business in Tennessee] shall be held as made in [Tennessee] and construed solely according to the laws of [Tennessee]."). The Policy does not have a choice-of-law provision. It was issued and delivered in Tennessee. (D.E. 1-1, Page ID 12.) The Court applies Tennessee substantive law.

**III. Standard of Review**

Under Federal Rule of Civil Procedure 56(a), a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party,

4

having had sufficient opportunity for discovery, lacks evidence to support an essential element of its case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

**IV. Analysis**

This case turns on whether the Water Exclusion Provision applies to Johnson's losses. The Parties dispute whether the losses were caused by "flood" or "surface water," which would exclude coverage, and whether those terms are ambiguous.

**A. Breach of Contract**

When considering issues of state law, federal courts "must follow the decisions of the state's highest court when that court has addressed the relevant issue." Talley v. State Farm Fire & Cas. Co., 223 F.3d 323, 326 (6th Cir. 2000). If the forum state's highest court has not addressed the issue, federal courts must "anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." See In re Dow Corning Corp., 419 F.3d 543, 549 (6th Cir. 2005).

In Tennessee, courts construe insurance policies "using the same tenets that guide the construction of any other contract." See Garrison v. Bickford, 377 S.W.3d 659, 664 (Tenn. 2012). The primary goal is to ascertain and give effect to the parties' intent. See Martin v. Powers, 505 S.W.3d 512, 517 (Tenn. 2016) (citing Garrison, 377 S.W.3d at 664). Courts endeavor to give policy terms their plain and ordinary meaning. See id. The plain and ordinary meaning "is the meaning which the average policy holder and insurer would attach to the policy language." S. Trust Ins. Co. v. Phillips, 474 S.W.3d 660, 667 (Tenn. Ct.

6

App. 2015) (internal quotation marks omitted). "When called upon to interpret a term used in an insurance policy that is not defined therein, courts in Tennessee sometimes refer to dictionary definitions." Am. Just. Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 815 (Tenn. 2000) (relying on Black's Law Dictionary). The Tennessee Supreme Court has also considered decisions from other state high courts and federal circuit courts that address the meaning of a disputed policy term. See Lammert v. Auto-Owners (Mut.) Ins. Co., 572 S.W.3d 170, 175-78 (Tenn. 2019).

"[C]ontracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls." Garrison, 377 S.W.3d at 664 (citation omitted). "However, a strained construction may not be placed on the language used to find ambiguity where none exists." Id. (internal quotations omitted).

The Tennessee Supreme Court has not defined "surface water" in the insurance context. Black's Law Dictionary defines the term as "water lying on the surface of the earth but not forming part of a watercourse or lake. Surface water most commonly derives from rain, springs, or melting snow." SURFACE WATER, Black's Law Dictionary (11th ed. 2019). State high courts have adopted equivalent definitions. Boazova v. Safety Ins. Co., 968

7

N.E.2d 385, 392 (Mass. 2012); Thorell v. Union Ins. Co., 492 N.W.2d 879, 883 (Neb. 1992); Heller v. Fire Ins. Exch., a Div. of Farmers Ins. Grp., 800 P.2d 1006, 1008-09 (Colo. 1990); State Farm Fire & Cas. Co. v. Paulson, 756 P.2d 764, 768 (Wyo. 1988); Fenmode, Inc. v. Aetna Cas. & Sur. Co. of Hartford, Conn., 6 N.W.2d 479, 481 (Mich. 1942). Federal circuit courts have adopted equivalent definitions. Lucky Leather, Inc. v. Mitsui Sumitomo Ins. Grp., 650 F. App'x 364, 364 (9th Cir. 2016); Fid. Co-op. Bank v. Nova Cas. Co., 726 F.3d 31, 40 (1st Cir. 2013); Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se., 492 F. App'x 16, 20 (11th Cir. 2012); T.H.E. Ins. Co. v. Charles Boyer Childrens Tr., 269 F. App'x 220, 222 (3d Cir. 2008); Front Row Theatre, Inc. v. Am. Mfr's. Mut. Ins. Companies, 18 F.3d 1343, 1347 (6th Cir. 1994).

Johnson argues that "surface water" is ambiguous. In a recent case, the New Jersey Superior Court, Appellate Division, found "surface water" ambiguous based on competing definitions:

> "Surface water" has been defined to possess a permanent nature, akin to a body of water. See N.J.A.C. 7:7-16.4 (defining "surface water" as "water in lakes, ponds, streams, rivers, bogs, wetlands, bays, and ocean that is visible on land"); N.J.A.C. 7:9B-1.4 (defining "surface waters" as "water at or above the land's surface which is neither groundwater nor contained within the unsaturated zone, including, but not limited to, the ocean and its tributaries, all springs, streams, rivers, lakes, ponds, wetlands, and artificial waterbodies").

> Alternatively, "surface waters are those which fall on the land from the skies or arise in springs, and, following no defined course or channel, are lost by being diffused over the ground through percolation, evaporation, or natural drainage. They embrace waters derived from falling rain and melting snow, whether on the ground or on the roofs of buildings thereon." Nathanson v. Wagner, 118 N.J. Eq. 390, 393, 179 A. 466 (Ch. 1935).

Sosa v. Massachusetts Bay Ins. Co., 206 A.3d 1011, 1018 (N.J. App. Div. 2019)(reformatted). Johnson argues that this ambiguity, resolved in his favor, means "surface water" is a permanent body of water.

"Surface water" is not ambiguous. The Sosa decision relied on definitions of "surface water" found in sections of the New Jersey Administrative Code related to coastal zone management and water quality. See N.J.A.C. 7:7-16.4; 7:9B-1.4. Those technical definitions are limited to New Jersey. Under Tennessee law, a term's ordinary, popular meaning prevails unless it has acquired a technical sense in commercial usage that is clearly conveyed in the insurance policy. Cf. Lammert, 572 S.W.3d at 179. The Policy does not provide that "surface water" has a technical definition. The term's ordinary, popular meaning prevails. The Sosa decision is also against the weight of authority. State high courts and federal circuit courts have repeatedly found "surface water" unambiguous. See Thorell, 492 N.W.2d at 883; Heller, 800 P.2d at 1009; Paulson, 756 P.2d at

9

766; see also Lucky Leather, 650 F. App'x at 364; T.H.E. Ins., 269 F. App'x at 223.

The purpose and structure of the Water Exclusion Provision foreclose Johnson's favored definition. It is unlikely that a permanent body of water, unaffected by superseding events, could cause losses that the parties would wish to exclude from coverage. Losses result when superseding events force a permanent body of water beyond its customary boundaries. The Court understands Johnson to argue implicitly for a definition that equates "surface water" with "a permanent body of water affected by superseding events." The Water Exclusion Provision already excludes losses caused by superseding events that might affect a permanent body of water (e.g., tides, tidal water, tsunamis, overflow, spray, surge). If Johnson's definition were adopted, the exclusion of "surface water" would be surplusage. The term "surface water" does not mean a "permanent body of water." It does not mean "a permanent body of water affected by superseding events." See Graybar Elec. Co. v. Davco Corp., 1985 WL 3429, at *2 (Tenn. Ct. App. Nov. 1, 1985)("All words used in a contract are presumed to have meaning."). There is no ambiguity.

Johnson asserts that the failure of nearby storm drains and ditches might have caused the water accumulation around his house. He argues that water accumulation caused by manmade structures is not surface water. Under the terms of the Policy,

10

an exclusion applies regardless of the cause of the excluded event. See Section I(2), supra ("We do not insure for such loss regardless of . . . the cause of the excluded event . . . ."). Surface water that accumulates because of manmade structures is excluded under the Policy.

The cases that Johnson cites address water main ruptures. They stand for the proposition that, where water comes from artificial sources, it cannot constitute surface water. See Auto-Owners Ins. Co. v. United Way of E. Cent. Alabama, 497 F. Supp. 3d 1115, 1121 (N.D. Ala. 2020); Comley v. Auto-Owners Ins. Co., 563 S.W.3d 9, 12 (Ky. 2018). It is undisputed that the source of the water here was natural – rain. Rainwater lying on the surface of the earth is surface water. See SURFACE WATER, Black's Law Dictionary (11th ed. 2019). Surface water was a cause of Johnson's losses. His losses are not covered under the Policy.[2]

**B. Bad Faith Refusal to Pay**

Johnson's statutory bad faith claim fails based on the Court's conclusion above. To prevail on a statutory bad faith claim, a plaintiff must prove:

> (1) The policy of insurance must, by its terms, become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60

---

[2] The Court need not decide whether the term "flood," as used in the Policy, is ambiguous or applicable to Johnson's claims. The Policy's exclusions apply if an excluded event was a cause of the loss. See Section I(2), supra ("We do not insure for such loss regardless of . . . other causes of the loss. . . .").

11

days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.

Palmer v. Nationwide Mut. Fire Ins. Co., 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986). Johnson's losses fell under the Policy's exclusions and the policy of insurance did not become due and payable.

**V.   Conclusion**

State Farm's Motion is **GRANTED**. Johnson's claims against State Farm are **DISMISSED**.

SO ORDERED this 16th day of November, 2021.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE